USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/23/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
      ANTONIO SANDERS,

                            Plaintiff,

              - against -

NEW WORLD DESIGN BUILD, INC., et al.,

                          Defendants.
------------------------------------------------------------X

19-CV-1071 (VSB)

**OPINION & ORDER**

Appearances:

Daniel Judah Altaras
Derek Smith Law Group, PLLC
New York, NY
*Counsel for Plaintiff*

Gregg P. Tabakin
Fein, Such Fein, Such, Kahn & Shepard, P.C
Parsippany, NJ
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Before me is Plaintiff Antonio Sanders's motion to dismiss Defendants' counterclaims. (Doc. 24.) Because I do not have supplemental jurisdiction over Defendants' counterclaims, Defendants' counterclaims are DISMISSED, and Plaintiff's motion to dismiss is DENIED as moot.

**I.      Factual Background and Procedural History**[1]

From April 10, 2018 until May 15, 2018, Plaintiff was employed as a carpenter for Defendant New World Design Build, Inc. ("New World") and Defendant John Farese, the owner of New World. (*Id.* ¶¶ 8–9.) While employed, Plaintiff reported to Defendants Robert Bulo and George Bardis, Supervising Managers at New World, and worked alongside Defendant Jose Alduvi Pacheco. (*Id.* ¶¶ 10–12.) Plaintiff alleges that he was repeatedly subject to his co-workers' discriminatory comments and harassment, and that his employment was eventually terminated in retaliation for his complaints about Defendants' unlawful discriminatory conduct.

Plaintiff Antonio Sanders ("Plaintiff") filed the complaint in this action on February 4, 2019. (Doc. 1.) The complaint pleads eleven causes of action arising under federal and state law in connection with Defendants' alleged acts of discrimination and unlawful retaliation against Plaintiff. Prior to filing the complaint, on July 23, 2018, Plaintiff submitted a Charge of Discrimination to the United States Equal Employment Opportunity Commission ("EEOC"), and on November 6, 2018, Plaintiff received a Right to Sue Letter from the EEOC. (*Id.* ¶ 3.)

On May 13, 2019, Defendants Farese and New World answered Plaintiff's complaint, and asserted a state law counterclaim against Plaintiff for malicious prosecution. (Doc. 21.) On the same day, Defendants Pacheco, Bardis, and Bulo filed a separate but nearly identical answer, and asserted state law counterclaims for malicious prosecution and defamation. (Doc. 22.) Defendants' malicious prosecution claims allege that Plaintiff maliciously prosecuted Defendants by filing the EEOC charge of discrimination and the complaint in the instant action. (Doc. 21 ¶¶ 29–48; Doc. 22 ¶¶ 29–48.) The defamation counterclaim asserted by Defendants

---

[1] The factual background is derived from the allegations in Plaintiff's complaint, (Doc. 1), as well as Defendants' Answers and Counterclaims, (Docs. 21, 22). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings in this Opinion & Order.

Pacheco, Bardis, and Bulo alleges that Plaintiff defamed them on May 29, 2018 when he spoke with Defendant Farese about his termination and complained about the racial epithets and sexual harassment he faced at the hands of these defendants. Defendants allege that I have jurisdiction over these counterclaims because they are compulsory counterclaims. (Doc. 21, at ¶ 7; Doc. 22, at ¶ 7.) Defendants allege no other basis for jurisdiction over their counterclaims.

On June 3, 2019, Plaintiff filed a motion to dismiss Defendants' counterclaims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 24.) Defendants opposed the motion on June 17, 2019, (Docs. 25, 26), and Plaintiff filed a reply memorandum of law on June 24, 2019, (Doc. 27.)

## II.     **The Court's Supplemental Jurisdiction**[2]

Defendants claim that I have supplemental jurisdiction over their state law counterclaims under 28 United States Code § 1367(a). (Doc. 21, at ¶ 7; Doc. 22, at ¶ 7.) Section 1367(a) confers on the Court "supplemental jurisdiction over all [] claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d

---

[2] Federal district courts are courts of limited jurisdiction, and are obligated to confirm subject matter jurisdiction over matters before them. *See Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C. v. Dupont*, 565 F.3d 56, 62–63 (2d Cir. 2009) ("'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress.") (quoting *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). Although neither party has raised a question as to this Court's jurisdiction over Defendants' counterclaims, "it is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (citation omitted). If the Court finds that subject matter jurisdiction is lacking, "dismissal is mandatory." *Id*. A court may dismiss a claim on jurisdictional grounds *sua sponte* and without notice to the parties when, as here, the court finds that it is "unmistakably clear that the court lacks jurisdiction." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018).

234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).  A state law counterclaim automatically satisfies this test when it is a compulsory counterclaim under Federal Rule of Civil Procedure 13.  *See Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 810–11 (2d Cir. 1979) ("The general rule as applied to counterclaims is that a federal court has ancillary jurisdiction over compulsory counterclaims . . . .").  A counterclaim is compulsory under Rule 13 if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and this standard is met when there is a "logical relationship" between the counterclaim and the main claim.  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004).  The "logical relationship" test asks "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit."  *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

When a counterclaim is not compulsory, however, the Court must independently decide under section 1367 "the constitutional question whether there is federal jurisdiction over the counterclaim."  *Jones*, 358 F.3d at 212 (quoting *Ambromovage v. United Mine Workers*, 726 F.2d 972, 990 (3d Cir. 1984)).[3]  Therefore, unless the counterclaim satisfies the "common nucleus of operative fact" standard, the Court cannot exercise supplemental jurisdiction pursuant to § 1367(a).[4]  Even if a permissive counterclaim satisfies the constitutional test, that "does not

---

[3] Although the Second Circuit stated in *Harris* that a defendant must raise an independent basis for federal jurisdiction over a counterclaim that is merely permissive under Rule 13(b), 571 F.2d at 122, the Second Circuit's decision in *Jones* rejected this reasoning.  *See Jones*, 358 F.3d at 212–13 ("[S]ection 1367 has displaced, rather than codified, whatever validity inhered in the earlier view that a permissive counterclaim requires independent jurisdiction (in the sense of federal question or diversity jurisdiction).").

[4] The Second Circuit has not concluded whether § 1367's "common nucleus of operative fact" standard, first articulated in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), "provides the outer limit of an Article III 'case,' and is therefore a requirement for entertaining a permissive counterclaim" through the Court's exercise of supplemental jurisdiction.  *Jones*, 358 F.3d at 213 n.5.  *Jones* acknowledged that the Seventh Circuit has read § 1367 as requiring only a "'loose factual connection between the claims'" and noted that such a standard "appears to be broader than the *Gibbs* test."  *Id.* (quoting *Channell v. Citicorp National Services, Inc.*, 89 F.3d 379 (7th Cir. 1996).

end the inquiry a district court is obliged to make with respect to permissive counterclaims." *Jones*, 358 F.3d at 214. The court still "must consider whether any of the four grounds set out in subsection 1367(c) are present to an extent that would warrant the exercise of discretion to decline assertion of supplemental jurisdiction." *Id.* Section 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if—

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C. § 1367(c). "If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction." *Catzin*, 899 F.3d at 85. "[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Id.* (quoting *Jones*, 358 F.3d at 214 (citing *Gibbs*, 383 U.S. at 726)).

### III.  Discussion

I find that Defendants' counterclaims, styled as state common law torts alleging malicious prosecution and defamation based on Plaintiff's filing of an EEOC Charge of Discrimination and raising a complaint about discrimination with Defendant Farese, do not

---

However, the Second Circuit has continued to rely on the "common nucleus of operative fact" standard, as have district courts within this circuit. *See, e.g.*, *Shahriar*, 659 F.3d at 245 ("For purposes of section 1367(a), claims 'form part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'"); *Frederick v. State*, 232 F. Supp. 3d 326, 332 (W.D.N.Y. 2017) (rejecting application of the "loose factual connection" standard and applying *Gibbs*); *LaChapelle v. Torres*, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014) (collecting cases).

5

satisfy the requirements of supplemental jurisdiction under § 1367.  First, contrary to Defendants' contention, the Second Circuit has explicitly held that counterclaims of this nature are not compulsory under Rule 13(a).  *See Harris*, 571 F.2d at 124. ("[A] claim in the nature of malicious prosecution, which arises out of the bringing of the main action, generally cannot be asserted either as a compulsory or a permissive counterclaim, since such a claim is premature prior to the determination of the main action.") (citation omitted).  Second, even if Defendants' counterclaims independently satisfied the "common nucleus of operative fact" test sufficient to warrant the exercise of supplemental jurisdiction, which they do not, I would still decline to exercise supplemental jurisdiction under § 1367(c).

In *Harris*, the Second Circuit dismissed state law counterclaims in circumstances similar to the instant case.  571 F.2d 119.  The plaintiff's suit involved defendant's alleged securities law violations and fraudulent inducement of the plaintiff's stock sale.  *Id.* at 121.  The defendants raised state law counterclaims for libel and malicious prosecution based on statements contained in the complaint, as well as on statements concerning the lawsuit made after the complaint was brought.  *See id.*  In rejecting the defendant's contention that the counterclaims were compulsory under Rule 13(a), and thus subject to the court's ancillary jurisdiction, the court stated that "the case law seems clear that a counterclaim which stems from the filing of the main action and subsequent alleged defamations is not a compulsory counterclaim covered by Rule 13(a)." *Id.* at 124.  The court went on to note that even defamatory statements disseminated before the filing of the complaint do not give rise to a compulsory counterclaim for defamation.  *See id.* at 124–25.  *Harris* recognized that although the plaintiff's claim and the defendants' counterclaims were related in that "success on the main claim would probably have defeated the counterclaim[s]," the issues of fact and law raised by the counterclaims were sufficiently different so that the

6

logical relation between them was "at best attenuated." *Id*. at 124.  The court specifically identified as distinct issues of fact and law the issues involving the application of certain state law privileges in defamation actions, and questions as to whether the plaintiff's defamatory statements were made with the requisite scienter.  *See id.*

The analysis applied in *Harris* similarly forecloses Defendants' contention here that their malicious prosecution and defamation counterclaims are compulsory under Rule 13(a) and therefore satisfy § 1367(a).  Consistent with the holding in *Harris*, Defendants' counterclaims "do not arise out of the same transaction or occurrence as the main claim[;] [r]ather, they arise out of the institution of the instant legal proceedings and statements allegedly made in connection therewith."  *Hickory Pine Assocs. Ltd. P'ship v. Purchase Envtl. Prot. Ass'n, Inc.*, No. 92 CIV. 1414 (TPG), 1995 WL 231311, at *3 (S.D.N.Y. Apr. 19, 1995) (dismissing, for lack of supplemental jurisdiction, counterclaims asserting malicious prosecution, intentional infliction of emotional distress, and defamation arising out of the publishing of a complaint and related public statements); *see also Hetchkop v. Eve Concrete Corp.*, No. 92 CIV. 4137 (LBS), 1993 WL 78073, at *3 (S.D.N.Y. Mar. 18, 1993) (denying supplemental jurisdiction over malicious prosecution counterclaim "aris[ing] out of the filing of the complaint"); *cf. Suk Joon Ryu v. Hope Bancorp, Inc.*, No. 18 CIV. 1236 (JSR), 2018 WL 1989591, at *11 (S.D.N.Y. Apr. 26, 2018) ("[T]he malicious prosecution counterclaim . . . is not a compulsory counterclaim as it stems from the filing of the main action, not the facts underlying the main action."), *appeal dismissed*, No. 18-1614, 2018 WL 6205526 (2d Cir. Sept. 4, 2018).  This reasoning similarly forecloses Defendants' attempt to base supplemental jurisdiction on Plaintiff's filing of the EEOC charge, which is "a precondition to filing an action in federal court under Title VII,"

*Odom v. Doar*, 497 F. App'x 88, 89 (2d Cir. 2012).[5]  *Cf. Quinones v. Nescie*, 110 F.R.D. 346, 348 (E.D.N.Y. 1986) (denying supplemental jurisdiction over malicious abuse of process and libel counterclaims that "ar[o]se from plaintiff's filing of th[e] complaint and a complaint before the [New York City Commission of Human Rights], and from certain statements made by plaintiff in the course of those proceedings").  Indeed, as Defendants admit, Plaintiff's "charging document with the EEOC alleg[ed] substantially the exact same claims as stated in the Complaint."  (Doc. 21 Counterclaim ¶ 8; Doc. 22 Counterclaim ¶ 8.)  Similarly, Defendants' allegations in the malicious prosecution counterclaim essentially repeat their defense to the EEOC charge, (*see* Doc. 21 Counterclaim ¶¶ 11–16, 33, 40; Doc. 22 Counterclaim ¶¶ 11–16, 33, 40), and they allege that this lawsuit is just an extension of that action, (*see* Doc. 21 Counterclaim ¶¶ 38–39, 46–47; Doc. 22 Counterclaim ¶¶ 38–39, 46–47).  Therefore, I conclude that Defendants' counterclaims are not compulsory, and further find that they do not satisfy *Gibbs*' "common nucleus of operative fact" test.

Even if Defendants' counterclaims could be construed as satisfying the "common nucleus of operative fact" test sufficient to warrant the exercise of supplemental jurisdiction, I find in my discretion that exercising jurisdiction over Defendants' counterclaims would be inappropriate under § 1367(c).  Defendants' counterclaims raise "complex issue[s] of State law" regarding the extent to which New York common law malicious prosecution and defamation actions may be brought based on an employee's charge of race and sex discrimination against an employer.  28

---

[5] I note that it is not clear from Defendants' counterclaims whether their assertion of supplemental jurisdiction is premised on Plaintiff's filing of the EEOC charge, or merely Plaintiff's filing of the complaint.  Defendants' counterclaims appear to suggest that supplemental jurisdiction in this case can be based solely on Plaintiff's filing of the complaint.  (*See* Doc. 21 Counterclaim ¶ 7 ("This court has jurisdiction over the parties to hear the counterclaims stated as they are compulsory counterclaims as they arise out of the very filing of the Complaint."), ¶¶ 38–48; Doc. 22 Counterclaim ¶ 7 (same), ¶¶ 38–48.)  As noted above, the law precludes this type of pleading.  *See Steinem*, 571 F.2d at 124 ("(a) claim in the nature of malicious prosecution, which arises out of the bringing of the main action, generally cannot be asserted either as a compulsory or a permissive counterclaim, since such a claim is premature prior to the determination of the main action.") (citation omitted).

U.S.C. § 1367(c)(1); *cf. Harris*, 571 F.2d at 125 ("[T]he predominance of difficult state law issues as outlined above would justify dismissal of such jurisdiction as a matter of discretion."). Indeed, *Harris* itself concluded that "suits for malicious prosecution, libel or slander, which are based on state law, are best decided by the state courts." *Harris*, 571 F.2d at 125. Although New York courts have provided some guidance on the viability of such actions under the circumstances, whether a cause of action is viable here will depend in part on New York's public policy. S*ee e.g.*, *Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 253–54 (1st Dept. 1995) (discussing the "issue of whether statements made by workers to their employer, concerning [discriminatory] remarks allegedly made by a supervisor, are privileged communications and therefore, not actionable").

I also find that declining the exercise of supplemental jurisdiction here "promote[s] the values articulated in *Gibbs*: economy, convenience, fairness, and comity." *Catzin*, 899 F.3d at 85. In addition to promoting comity for state law, as the Second Circuit stated in *Harris*, "postponement of suits that will ordinarily not arise if plaintiff wins the main action" is a "strong policy reason[] supporting" dismissal, and furthers judicial economy. *Harris*, 571 F.2d at 125. Furthermore, dismissal here helps "avoid[]. . . the 'dangerous potentialities of counterclaims []in the nature of[] malicious prosecutions as a defensive stratagem,'" which promotes fairness. *Id.* at 125.[6]

---

[6] My decision does not mean that Defendants are without recourse should they seek to vindicate their claims. Instead, "[Defendants'] remedy is to defeat [Plaintiff's] claim[s] on [their] merits . . . , and then, if so advised for purposes of specific or general deterrence, attempt a suit against the [Plaintiff]." *Proulx v. Citibank, N.A.*, 659 F. Supp. 972, 979 (S.D.N.Y. 1987) (concluding that Title VII of the Civil Rights Act did not bar a subsequent defamation claim brought by an employer against an employee); *see also Herlihy v. Metro. Museum of Art*, 160 Misc. 2d 279, 284 (Sup. Ct. 1994), *aff'd as modified*, 214 A.D.2d 250 (1st Dep't 1995) (discussing *Proulx* and stating that "a subsequent suit can still be brought by the person wrongly charged against an employee for defamation for making a malicious discrimination claim.").

## IV. Conclusion

Because I conclude that I do not have supplemental jurisdiction over Defendants' counterclaims, I do not opine on the merits of Plaintiff's motion to dismiss, (Doc. 24). Accordingly, it is hereby:

ORDERED that Defendants' counterclaims are DISMISSED. Defendants are directed to refile their answers in accordance with this opinion within fourteen (14) days of the entry of this Opinion & Order.

IT IS FURTHER ORDERED that Plaintiff's motion to dismiss is DENIED as moot.

The Clerk of Court is directed to terminate the open motion at Document 24.

SO ORDERED.

Dated: April 23, 2020
      New York, New York

Vernon S. Broderick
United States District Judge